O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN CELIO, | Case No. CV 08-00545 DDP (AJWx) |
| Plaintiff, | |
| v. | **ORDER AND JUDGMENT** |
| FIRST UNUM LIFE INSURANCE COMPANY; a corporation; HSBC BANK USA, a corporation, | |
| Defendants. | |

**I. BACKGROUND**

    A.   <u>Factual Background and Plaintiff's Claim Process with Unum before California Regulatory Insurance Settlement</u>

Plaintiff Carmen Celio brings this suit to contest an adverse disability benefit determination by Defendant First Unum Life Insurance Company ("Unum"). Plaintiff was employed by HSBC Bank for twenty-two years until October 2004. Prior to the end of her employment, on January 1, 2004, Unum issued a group policy to HSBC employees such as Plaintiff, providing long-term disability insurance compensating 50 percent of monthly income. As relevant here, the plan defines "disability" as being <u>continuously disabled</u>[1]

---

[1] Where the disability stops for 30 days or less during the
(continued...)

for 180 days; during which the employee is limited from performing the "material and substantial duties of [his or her] regular occupation due to sickness or injury." (Admin. Record[2] ("AR") 258.)  After twelve months of payments, disability is defined as being unable to perform the duties of "any gainful occupation for which [the employee is] reasonably fitted by education, training or experience." (Id.)

On January 14, 2004, Plaintiff stopped going to work due to various medical conditions causing incontinence. (AR 80, 140.) On April 28, 2004, Plaintiff underwent surgery to correct this symptom, without results. (AR 83, 238.) On June 15, 2004, Plaintiff's doctor Michael Tahery determined that Plaintiff had been continuously disabled since January and would remain so until August 1, 2004. (AR 92.)  Unum received Plaintiff's claim for long-term disability on August 23, 2004, based on incontinence, which it acknowledged by letter to Plaintiff on August 30. (AR 17, 48.)  In that letter, Unum stated that it intended to contact Dr. Tahery to obtain additional information to review her claim. (AR 48.)  On October 19, 2004, Dr. Tahery informed Unum that Plaintiff suffered from incontinence, resulting in frequent urination, and giving a possible return to work date of January 2, 2005. (AR 75.)

On November 17, 2004, Unum states that it spoke to Plaintiff and that she informed Unum that she had been back to work since

---

[1](...continued)
elimination period, these days do not stop the running of the 180 day period.  However, non-disabled days do not count toward the 180 day total.  (See Admin. Record Ex. A at 16.)

[2] Unless otherwise indicated, AR refers to Exhibits B and C of the Administrative Record.

2

October and did not intend to pursue a disability claim.[3] (AR 102.) That same day, Unum sent Plaintiff a letter confirming this conversation and advising Plaintiff that her claim would be closed, based on her reported return to work. (AR 105.) In response, on December 6, 2004, Plaintiff alleges she sent a letter to Unum stating the following:

> Please see attached severance package. I did not physically go back to work. I was released for one day; so I could receive my severance, so I won't be receiving [d]isability. Please note my birthdate is 12/26/54.

(AR 225.) Plaintiff argues this letter was an appeal of Unum's decision to close her claim, while Unum argues that it never received this letter. According to Plaintiff, she never actually returned to work and, instead, was "released [by her doctor] for a single day as a fiction so that she could collect severance pay [from HSBC Bank]." (Pl. Br. 6.) Plaintiff's severance pay was based on the fact that, although she was on disability leave as of January 2004, HSBC had already identified Plaintiff to be discharged from employment on March 1, 2004. (AR 210.) Plaintiff was not eligible to begin collecting severance until she was authorized to return to work, which (according to HSBC) occurred on October 28, 2004. (AR 210.)

Plaintiff did not contact Defendant again until approximately 11 months later, on November 7, 2005, when she requested that her claim be reassessed under the regulatory settlement agreement between the California Department of Insurance ("DOI") and Unum.

---

[3] In a declaration submitted with her trial briefs, Plaintiff denies that she ever informed Unum that she withdrew her disability claim.

3

     B.    <u>Plaintiff's Request for Reassessment of her Claim under the California DOI Regulatory Settlement Agreement</u>

Unum entered a regulatory settlement agreement (the "CSA") with California's DOI on October 3, 2005. The CSA provides for the reassessment under specific guidelines of claims that were denied or benefits that were terminated during the period from January 1, 1997 to September 29, 2005 - which includes Plaintiff's August 2004 claim.

Although Plaintiff submitted her request for reassessment on November 7, 2005, it was not until one year later, on December 27, 2006, that Plaintiff submitted to Unum a completed Reassessment Information Form ("RIF"), her medical records from 2004 to 2006, and other documentation. (AR 123-215.) In her RIF, Plaintiff stated that Unum's denial of her claim in 2004 had been incorrect, because Plaintiff had "been on disability" since January 14, 2004, and the only reason she had returned to work was that HSBC required this in order for her to qualify for a severance package. (AR 124.)

Unum called Plaintiff on January 9, 2007 and asked why she had not contacted the company after receiving notice on November 17, 2004 that her claim had been denied. (AR 220.) Plaintiff responded that she had gotten confused and thought Unum was the state disability carrier. (<u>Id.</u>)

     C.    <u>Unum's Denial of Plaintiff's 2005 Reassessment Claim and the Independent Review of Unum's Denial</u>

In January 2007, Defendant's senior clinical consultant Nurse Sledge submitted a report as part of Defendant's CSA reassessment of Plaintiff's claim, noting that work restrictions were not typically associated with incontinence. (AR 238-40.) Sledge also

4

stated that any such restrictions, where applicable, were not supported throughout the Plan's 180-day elimination period (from January to July 2004), and thus Plaintiff's claim would not have been eligible for benefits under the policy.  (Id.)

In accordance with the CSA, in February 2007 Defendant sent Plaintiff's file to outside medical reviewer Dr. Jerome Klobutcher, who provided a medical report indicating that Plaintiff's medical records failed to indicate any specific restrictions associated with her condition, and that her alleged disability would only have created brief periods of total functional restriction during the elimination period in 2004.  (AR 301-07).  Dr. Klobutcher's report further recommended, given that the available medical records did not clearly reveal the underlying cause of Plaintiff's complaint, that Plaintiff be re-evaluated by another urogynecologist, or a urologist with expertise in diverticula and interstitial cystitis, both of which were of particular concern in Plaintiff's case.  (AR 305.)  Unum also obtained a vocational analysis from Dorothy Edwards, its Senior Vocational Rehabilitation Consultant, who noted the restrictions and limitations mentioned in Dr. Klobutcher's report would not have limited Plaintiff from performing the material and substantial duties associated with her occupation at HSBC as a clerk.  (AR 317, 319-321.)

On February 27, 2007, Unum wrote to Plaintiff and informed her that her CSA claim reassessment had been completed.  Unum stated that the original decision to deny her claim in 2004 was appropriate, based on the alternative[4] reason that her medical

---

[4] Again, the original reason was that Plaintiff had told Unum
(continued...)

5

1  records did not provide support for a finding of disability
2  limiting performance of the material and substantial duties of her
3  job during the 180-day elimination period.  (AR 324-27.)  Unum's
4  letter to Plaintiff also advised that Plaintiff could request an
5  independent review of its decision by an independent organization,
6  unaffiliated with Unum and approved by the California DOI, to re-
7  evaluate her claim.  (AR 326.)

   Plaintiff requested this independent review, which was conducted by Dr. Skip Freedman.  Dr. Freedman provided a CSA independent review report, which reviewed Plaintiff's Unum claim file and found that Plaintiff did not qualify for long-term disability.  (AR 348-52.)  On May 15, 2007, Unum notified Plaintiff that the independent review had upheld Defendant's reassessment decision to deny her long-term disability benefits.  (AR 347.) Plaintiff appealed the independent review to Unum.  She also submitted a vocational assessment report from rehabilitation expert Howard Goldfarb, which found that Plaintiff's incontinence beginning in January 2004 rendered her totally disabled.  (AR 378-79.)  Unum did not respond to Plaintiff's appeal of the reassessment and independent review, on the grounds that the CSA does not provide for a further internal appeal after an independent review is conducted.

   Plaintiff filed her complaint in this matter on January 28, 2008.  The Court now considers the parties' written trial briefs.

**II. DISCUSSION**

---

[4](...continued)
that she had returned to work.

6

A.  Applicable Standard of Review of Plaintiff's Benefit Determination

    1.  Unum's Authority under Plaintiff's Plan

The plan at issue here is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  The denial of benefits in an ERISA plan is reviewed de novo by the district court, unless the plan "unambiguously" grants the plan administrator or fiduciary discretionary authority to determine eligibility for benefits. Opeta v. Northwest Airlines Pension Plan, 484 F.3d 1211, 1216 (9th Cir. 2007)(internal quotation omitted); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  In that event, the denial of benefits is reviewed for abuse of discretion.   Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511 F.3d 1206, 1209 (9th Cir. 2008).  Accordingly, the "essential first step" is to "examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator."  Feibusch v. Integrated Device Tech., Inc., 463 F.3d 880, 883 (9th Cir. 2006)(internal quotation omitted).

  Discretionary authority consists of the "power to construe the terms of the plan," as opposed to where the plan merely "identif[ies] the plan administrator's tasks, but bestow[s] no power to interpret the plan."  Opeta, 484 F.3d at 1216 (internal quotation omitted); see also Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-65 (9th Cir. 2006)(holding that discretion is unambiguously conferred on the administrator when a plan grants "the power to interpret plan terms and to make final benefits determinations," and particularly where exclusive authority for final benefits determinations rests with the plan administrator).

In this case, the parties dispute whether the CSA applies to Plaintiff's claim. Both parties agree that Plaintiff's Plan contains one section that expressly provides unlimited discretion to the Plan administrator.[5] (See AR 276.) The CSA precludes Unum from using a provision which grants unlimited discretion in any *policy* issued after November 1, 2005, (Bernacchi Decl, Ex. A, CSA ¶¶ II.E, IV.A., V.D.); and Plaintiff's contract was issued before this date. However, Plaintiff argues that the CSA-mandated contract change applies to her Plan, because *claims* participating in the CSA reassessment also must be considered without reference to any unlimited discretion provision in a claimant's plan. (See CSA ¶ V.E.) Therefore, according to Plaintiff, Unum does not have power to interpret the plan. But regardless of whether the CSA refers to the handling of Plaintiff's claim or her policy itself, the overall effect of the *reassessment* in this case is the same – Unum is not bound by it. The CSA provides that: "[Unum] shall make the final decision in the CSA Reassessment as to whether the original decision is upheld, modified or reversed." (CSA ¶ III.C.) Accordingly, while Plaintiff is entitled to a reassessment that is free from the Plan's unlimited-discretion provision, Unum has final authority whether to disregard this reassessment.

---

[5] This section provides as follows:

**DISCRETIONARY ACTS**
In exercising its discretionary powers under the Plan, the Plan Administrator . . . will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan administrator . . . decides in its discretion that the applicant is entitled to them.

(AR 276.)

Therefore, as Unum is unambiguously granted discretion and final authority under Plaintiff's Plan, and also has final authority whether to uphold its original decision in light of the CSA reassessment, the Court finds that the appropriate standard of review is abuse of discretion.

2. Effect of Any Procedural Violations on Standard of Review

Under ERISA, plan administrators are required to "follow certain practices when processing and deciding plan participants' claims." Abatie, 458 F.3d at 971. Procedural violations under ERISA do not alter the standard of review, unless "the violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." Id. (internal quotation omitted). Put differently, when the "administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan," the proper review is de novo. Id. at 972.

Plaintiff first argues that Unum's original denial of her claim in October 2004 failed to provide the information required by ERISA regulations under 29 C.F.R. § 2560.503-1(g). That regulation requires that, in the event of an "adverse benefit determination," the plan administrator must provide the claimant with information regarding the specific rule or rationale that is the basis for the denial, a description of additional material or information needed from the claimant to perfect the claim, and a description of the plan's review and appeal procedures. 29 C.F.R. § 2560.503-1(g)(1).

9

Plaintiff also argues that Unum failed to comply with the requirements of 29 C.F.R. § 2560.503-1(h)(1)-(2), which provides that a claimant must be given the opportunity to appeal an adverse decision, to submit comments relating to the claim for benefits, and to provide for a "review that takes into account all [records and comments]" submitted by the claimant relating to his or her appeal of the claim.

While Unum did not use the word "appeal" in its letter to Plaintiff on November 17, 2004, the Court nevertheless finds that Unum essentially followed ERISA regulations. Unum's denial letter to Plaintiff states that the reason for the denial of her claim is that she has returned to work, and that in the event her disability reappears within six months, her claim would be treated as a recurrence of the same disability. The letter also gives Unum's contact information and the name of Plaintiff's claim and policy number. Any irregularities thus do not fall into the type of "rare class of cases" where a flagrant violation has occurred, because Plaintiff was notified of the opportunity to respond to Unum's denial letter and the manner in which she could respond to demonstrate her disability still existed. Accordingly, Unum's letter does not show an utter disregard of the Plan, particularly in light of Plaintiff's conceded confusion over whether Unum was a state or private disability carrier. Cf. Abatie, 458 F.3d at 971-72 (noting that a flagrant violation occurred where "the administrator had kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information"). Instead, this is "the more ordinary situation in which a plan administrator has

10

1  exercised discretion but, in doing so, has made procedural errors."
2  Id. at 972.[6]

3      Additionally, the letter Plaintiff sent to Unum on December 6,
4  2004 cannot fairly be considered an appeal.  While the letter
5  arguably contradicts the one reason given to Plaintiff by Unum to
6  deny her benefits - that she had not "physically" returned to work
7  - Plaintiff's letter is not coherent.  Plaintiff states that she
8  "did not physically go back to work," but does not provide any
9  context for this statement and then contradicts itself.  (See AR
10 225.)  The letter states:  "I was released for one day, so I could
11 receive my severance, so I won't be receiving Disability."  (AR
12 225.)  This sentence plausibly suggests that Plaintiff is no longer
13 seeking to pursue her disability claim.  The letter does not state
14 that Plaintiff's claim was improperly closed or that Plaintiff
15 wants anything from Unum at all - including a review, appeal, or
16 even examination of her claim.  (See id.)  Plaintiff also made no
17 attempt to contact Unum again until she applied for reassessment of
18 her claim - as opposed to an appeal of her claim under the Plan.
19 As such, the Court finds that Plaintiff did not actually appeal her
20 claim through her letter of December 6, 2004; and any failure by
21 Unum to advise Plaintiff of the right to an "appeal" in its denial
22 letter to her was not a flagrant violation of ERISA procedure.

---

[6] Unum also argues Plaintiff withdrew its claim, although Unum's notice to Plaintiff suggests that she, instead, had returned to work.  (AR 105-06.)  Although the record does indicate that Plaintiff told Unum she was withdrawing her claim (AR 102-03, 105-06, 111), in a separate declaration on appeal Plaintiff now denies that she withdrew her claim or told Unum that she had returned to work, and instead says that she told Unum's representative she was "going to return to work for a day as a fiction."  (See Pl. Reply Brief Ex. 501.)

11

Plaintiff next argues that flagrant violations of ERISA procedure occurred during the CSA reassessment.  Plaintiff states that Unum violated ERISA procedure because the CSA reassessment denied Plaintiff benefits based on a reason other than her return to work (i.e., that she was not disabled during the complete 180 day elimination period), without giving her an opportunity to appeal that decision.  Plaintiff also argues that the CSA reassessment did not take place in front of a named fiduciary of her Plan, as is required by ERISA.  Neither of these arguments has merit.  To begin, the CSA reassessment was conducted by Unum. Therefore, Plaintiff cannot argue that the appeal did not take place in front of a named fiduciary.  Second, simply because an appeal under ERISA comes to a conclusion that is different than the original determination does not mean that Plaintiff has not had an opportunity to submit evidence sufficient to constitute a "full and fair review."  As part of her reassessment, Plaintiff submitted medical records from her treating physician, Dr. Tahery, from 2004 to 2006, along with other documents as a part of her RIF prior to the reassessment.  (See AR 132-175.)  As such, Plaintiff did have the opportunity for a review that took into account all related documents submitted by her relating to the appeal of her claim.

For the above reasons, the Court finds no flagrant violations of procedure in the administrative record.  Accordingly, the Court reviews Unum's decision with regard to Plaintiff's claim under the abuse of discretion standard.

B.   <u>Analysis</u>

Under the abuse of discretion standard, the district court may only review "the evidence presented to the plan trustees."[7] <u>Winters v. Costco Wholesale Corp.</u>, 49 F.3d 550, 553 (9th Cir. 1995). However, "even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." <u>Boyd v. Bell</u>, 410 F.3d 1173, 1178 (9th Cir. 2005)(internal quotation omitted). Instead, the administrator of an ERISA plan "abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." <u>Id.</u> As described above, Unum provided a reasoned explanation for its decision to deny Plaintiff benefits. Plaintiff only argues that Unum misapplied the CSA to her Plan and relied on clearly erroneous findings of fact.

    1.   <u>Unum's Construction of the Terms of the CSA and her Plan</u>

Plaintiff argues that Unum did not properly apply the CSA, because she argues Unum did not: (1) give the necessary level of deference to Plaintiff's attending physician, whose opinion was that Plaintiff is disabled, or (2) give sufficient weight to her "self-reporting" of her disability. Neither argument is supported by the record.

The CSA provides that in order for an attending physician's opinion to be rejected, "the claim file must include specific reasons why the opinion is not well supported by medically

---

[7] Therefore, the Court declines to consider the vocational report of expert Howard Goldfarb, submitted by Plaintiff, as it was not submitted for review during the reassessment or independent review.

13

acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record." (CSA ¶ III.D.) Plaintiff's attending physician Dr. Tahery did, in fact, state that she was disabled during the elimination period. (AR 31.) However, the record demonstrates that Unum examined Dr. Tahery's opinion and determined that it was not supported. Unum's reassessment doctor Dr. Klobutcher specifically reviewed of Dr. Tahery's medical records in determining that there was not evidence of continuous disability, except for relatively brief periods after surgery or other procedures in 2004. (AR 304.) Unum's vocational consultant also determined that Dr. Tahery's medical diagnosis may have been correct, but disagreed that this would totally restrict Plaintiff from her work as a collection clerk at HSBC. (AR 320.) As described in Unum's reassessment letter to Plaintiff, there were only a few periods in Spring 2004 where Plaintiff would have been totally disabled. (AR 326) The other medical records provided by Plaintiff only suggested that she would need access to restrooms and lifting and walking restrictions. (Id.) Therefore, the Court does not find that Unum misconstrued the terms of the CSA by failing to give deference to Plaintiff's attending physician.

The CSA also requires that self-reported conditions be taken into consideration in determining disability. (See CSA ¶ IV.C.) Plaintiff argues that Unum failed to properly weigh her self-reporting of her symptoms and disability. Again, this is not supported by the record. Defendant's preliminary reassessment of Plaintiff's claim, as exemplified by the reports of Nurse Sledge, Dr. Klobutcher and vocational expert Dorothy Edwards, do not fail to consider Plaintiff's opinions. Rather, Unum considered her

14

reporting, including the symptoms she reported to Dr. Tahery, in a detailed and comprehensive analysis of Plaintiff's medical records. Unum actually weighed Plaintiff's reporting along with the other information such as diagnostic tests to reassess her claim. (AR 324-27.) Plaintiff thus cannot argue that Unum ignored or misapplied the CSA as to its requirements regarding self-reporting.

Therefore, the Court finds that Unum did not misconstrue the terms of Plaintiff's Plan as modified by the CSA.

### 2. <u>Unum's Factual Findings related to the CSA Reassessment</u>

Plaintiff argues that Unum's denial relied on factual findings that were clearly erroneous or unsupported. However, the record shows that both the CSA reassessment and independent review were supported by the medical records, data and specific information in Plaintiff's claim file - including her attending physician's notes, her voiding diary, and her lab results - in arriving at the conclusion that she was not eligible for long term disability.

Plaintiff first argues that Dr. Freedman, who conducted the independent review, mischaracterized the opinion of Dr. Klobutcher, who conducted the reassessment. Plaintiff states that the two doctors have conflicting opinions, which Dr. Freedman ignores to create the illusion of consensus. This is incorrect. Dr. Freedman correctly noted that Dr. Klobutcher stated in his report that in Spring 2004 Plaintiff had periods of total disability, but that her medical records did not support this condition on a continuous basis. (<u>See</u> AR 304 (noting that Plaintiff only had "periods of time" following surgery or other treatments where she would be totally disabled).)

Plaintiff next argues that Unum incorrectly found that she only became disabled in October 2005, when she was no longer covered by insurance. (See AR 326.) However, this finding is supported by Dr. Tahery's note on October 20, 2005, indicating that Plaintiff had a history of urge incontinence and a need to visit the restroom every seven minutes. (AR 135.) Furthermore, that Plaintiff had variable disability in the period before October 2005, and in particular during the elimination period in 2004, is supported by the analysis of Dr. Freedman, Dr. Klobutcher, and the vocational assessment of Dorothy Edwards. Both doctors recognize that the record did not support the opinion that Plaintiff was totally disabled on a continuous basis for 180 days; while Edwards states that, even assuming Dr. Tahery's diagnosis of incontinence, Plaintiff should still have been capable of going to work with restrictions.

Finally, Plaintiff takes issue with Dr. Freedman's opinion, in the independent review, that "it was . . . documented . . . that [Plaintiff] was still sexually active, therefore if she is able to engage in intercourse, she would be able to sit at her desk and perform her job." (AR 351.) While Dr. Tahery did note on two occasions that Plaintiff had complained of "pain with intercourse" (AR 133, 139), Dr. Freedman's extrapolation from these notes that Plaintiff was in fact sexually active is not clearly supported by the record. However, Dr. Freedman's conclusion does not rely exclusively on this inference. Instead, Dr. Freedman's conclusion is based on urodynamic testing and Plaintiff's voiding diaries, as well as her response to therapy. (See AR 351-52.)

Therefore, the Court finds that Unum did not rely on clearly erroneous findings of fact in determining that Plaintiff did not demonstrate disability within the elimination period.

**III. CONCLUSION**

Based on a thorough review of the record, it is ORDERED that judgment be entered in favor of Defendants First Unum Life Insurance Company and HSBC Bank USA.

IT IS SO ORDERED.

Dated: August 6, 2009

DEAN D. PREGERSON
United States District Judge